UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| SHEILA ARGABRIGHT, | : | Case No. 3:16-cv-00494 |
| --- | --- | --- |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| NANCY A. BERRYHILL, Commissioner Of The Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Sheila Argabright brings this case *pro se* challenging the Social Security Administration's decision to deny her applications for Disability Insurance Income and Supplemental Security Income. The denial occurred mainly through the determination by Administrative Law Judge (ALJ) Mark Hockensmith that Plaintiff was not under a benefits-qualifying disability.

Plaintiff states, "I really truly am not able to hold down a job because of the emotional and physical ailments that I deal with on a daily basis. I will need further surgeries and my sarcoidosis can require ongoing treatment." (Doc. #12). She indicates that her monthly income is very low, and she cannot better herself "in any way without a

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

break somewhere." *Id*. And she reports that most of Plaintiff's physicians have agreed that she cannot hold down a job at this point in her life. *Id*.

The Commissioner contends that substantial evidence supports the ALJ's finding that, despite her health problems, Plaintiff could still perform sedentary work with certain limitations. The Commissioner further argues that the ALJ properly weighed the various medical-source opinions of record, including (but not limited to) the opinions of her long-term treating physician, Dr. Mullennix, and the opinions of her psychiatrist, Dr. Bishop.

## II. Background

On the date of the ALJ's decision, in December 2015, Plaintiff was 47 years old. She was therefore considered to be a "younger" person under Social Security law. She has a high-school education. Her employment history involved work as a grocery clerk and an electronic assembler, but she has no past relevant work.

Before issuing his non-disability decision, the ALJ held a hearing during which Plaintiff was represented by counsel. Plaintiff's counsel identified the onset date of Plaintiff's disability as June 30, 2011. (Doc. #6, *PageID* #102).

Plaintiff testified that she has numerous health problems. Her knees and sarcoidosis were giving her the most trouble. She had undergone multiple knee surgeries and her remaining step would be knee-replacement surgery. She was told, presumably by a physician, that such surgery would not be a good idea at her age because the knee replacement last only 15 years. She would then need to go through another knee-replacement surgery. *Id*. at 109-10.

Knee pain limits Plaintiff's ability to climb stairs to one step at a time, each step

followed by a pause.  She has to hold onto something when she does this.  Her knee pain is constant.  When she moves her legs a certain way it feels like the bones are grinding together.  *Id*. at 110.  This happens a lot with her left knee.  She receives treatment with cortisone shots every three months.  She also feels pain when sitting.  And she gets "really stiff" when she stands up.  She has arthritis in her knees and lower back.  *Id*. at 115.

Plaintiff explained that she has sarcoidosis in her lungs and groin.  She experiences shortness of breath and coughing along with pain in her groin area.  She takes medication for sarcoidosis, but the medication causes her to be nauseated and have headaches at least two to three times a week.  *Id*. at 122.  She also has diabetes (treated with insulin and Metformin).  *See id*. at 124.  When her blood glucose is high, she has shakiness, nausea, sweating, and blurry vision.  *Id*.  She noted that her diabetes "has gotten better" with weight loss.  *Id*. at 114.  She lost weight due to stress.  At the time of the ALJ's hearing, she weighed approximately 282 pounds and was five feet eight inches tall.  *Id*. at 104.

Plaintiff can walk for 30 minutes.  She finds lifting a gallon of milk with one hand "actually kind of heavy."  *Id*. at 115-16.  She explained that she could not perform a job that required her to stock shelves with products weighing this amount because her arms are not strong enough to repeatedly this much weight.  *Id*. at 125-26.  If she sits for too long her "rear end gets numb."  *Id*. at 116.  She can sit on a soft surface (like a recliner) for 30 to 45 minutes before needing to stand.  When she sits in a normal chair her legs hurt all the time, and her back gets stiff.

Her normal daily routine involves staying in her bedroom most of the time so she can lie down and watch television. Lying with her legs up is the most comfortable position for her.

Plaintiff has pain in her hip that prevents her from lifting her right leg high enough to put on her sock and shoe. She has undergone hip surgery, and her hip is better but physical therapy did not help.

Plaintiff testified that she has had depression for many years. She has feelings of no self-worth causing lack of confidence ("I don't think I'm good enough to do these things."). *Id*. at 119. Her brother's death (a year before the ALJ's hearing) worsened her depression. She also has anxiety. She worries a lot about not being able to do things right.

Plaintiff maintained that she could not perform a full-time job because when she stands up her "legs crack" and because she has "to stand for a second before [she] can actually take a step." *Id*. at 120. Her legs will also shake, if she sits too long. Her ability to concentrate is not good; her mind wanders a lot. She does not do well in social settings and doubts that she can work with the public. She feels like everybody is looking at her and that there's something wrong. *Id*. at 121. When she drives on the highway she gets "very, very nervous." *Id*. at 127. She has difficulty sleeping and takes sleep medication, which does not help—she wakes up two or three times each night. Two or three times a week she takes naps during the day. Her longest nap lasts two hours.

On average during an eight-hour day, Plaintiff sits in recliner four to five hours.

When she is not depressed, she lies on her bed for a few hours then moves to a recliner. When she is depressed she can stay in her bedroom all day. This occurs, on average, two to three times a week. *Id*. at 123. Her energy level during the day is usually between poor and average. *Id*. at 125. She has "no motivation." *Id*.

### III. "Disability" and The ALJ's Decision

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" as the term is defined by the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both benefit programs. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See id.* at 469-70.

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's benefit applications. He did so by conducting the 5-step sequential evaluation mandated by Social Security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). He ultimately concluded that Plaintiff was not under a benefits-qualifying disability based on the following findings:

    Step 1:    Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date (June 30, 2011).

    Step 2:    Plaintiff's severe impairments include "degenerative joint disease of the knees, degenerative hip disease, right hip necrosis with

5

>residuals of joint replacement surgery, diabetes mellitus, hypertension, obesity, sarcoidosis/chronic obstructive pulmonary disease, major depressive disorder, [and] anxiety disorder." (Doc. #6, *PageID* #71).

>Step 3: Plaintiff's impairments did not meet or equal the criteria of an impairment in the Commissioner's Listings.[2]

>Step 4: Plaintiff could perform sedentary work limited to additional limitations: "(1) lifting and carrying no more than 20 pounds occasionally and ten pounds frequently; (2) standing or walking no more than two hours during any given eight-hour workday; (3) sitting up to six hours during any given eight-hour workday; (4) the opportunity to stand for a few minutes every 30 minutes while remaining at the workstation; (5) no climbing ladders ropes, or scaffolds; (6) no crouching or crawling; (7) no more than occasional climbing of ramps or stairs; (8) no more than occasional kneeling or stooping; (9) no more than occasional pushing or pulling with the lower extremities; (10) no work at unprotected heights; (11) no concentrated exposure to fumes, dusts, gases, odors or poorly ventilated areas; (12) no concentrated exposure to extreme heat or cold or humid conditions; (13) limited to simple, routine task in a static work environment with few changes in work routine; (14) no fast-paced duties or strict production quotas; (15) no more than occasional (and only brief) contact with the public." *Id*. at 79.

>Step 5: A significant number of jobs exist in the national economy that Plaintiff can perform. Examples of these jobs were inspector, sorter, and bench assembler.

(Doc.# 6, *PageID*#s 71-87). The ALJ's sequential evaluation led him to conclude, as previously indicated, that Plaintiff was not under a benefits-qualifying disability.

## IV. Judicial Review

The Social Security Administration's denial of Plaintiff's applications for benefits – here, embodied in ALJ Hockensmith's decision—is subject to judicial review along

---

[2] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1.

two lines: whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings. *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, substantial evidence supports the ALJ's factual findings when a "'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

**V.     Discussion**

At the conclusion of the ALJ's hearing, Plaintiff's then-counsel argued that the opinions of her treating-medical sources, including Drs. Mullennix and Bishop, were due controlling weight. The ALJ's decision is reviewed in light of this contention along with Plaintiff's present contention that her treating physicians found she could no longer work and her contention that she can no longer work due to her emotional and physical health problems, including sarcoidosis and her future need for additional surgeries.

7

In weighing the opinions presented by Plaintiff's physician and the other medical professionals, ALJ Hockensmith placed some (but not great) weight on the opinions of state-reviewing physicians, Drs. Villanueva and McKee. These physicians agreed with an earlier decision by a different ALJ that Plaintiff could perform sedentary work. This indicated that she could lift as much as 20 pounds occasionally and 10 pounds frequently, as well as push/pull without limitation, and work without postural, manipulative, or environmental restrictions. *See* Doc. #6, *PageID* #s 80, 130-31, 186-88. ALJ Hockensmith concluded that, based on new evidence (after the June 2011 decision), such as evidence about Plaintiff's right-hip-replacement surgery, she required an additional limitation allowing her to stand at a work station for a few minutes after a 30-minute interval. *Id*. at 83. Additionally, the ALJ reasoned that Plaintiff needed postural restrictions against climbing ladders, ropes, scaffolds plus a limitation to occasional climbing of ramps and stairs, as well as occasional kneeling, stooping, and pushing/pulling with the lower extremities. *Id*. The ALJ noted that safety considerations precluded Plaintiff from working at unprotected heights. And the ALJ concluded—due to Plaintiff's respiratory impairments—she needed to avoid concentrated exposure to fumes, dusts, gases, orders, poorly ventilated areas; and extreme heat, cold, or humidity. *Id*.

The ALJ also considered the treatment notes and opinions of Plaintiff's long-time family physician, Dr. Mullennix. The ALJ noted that in January 2012, Dr. Mullennix reported that Plaintiff was released to work in December 2011. *Id*. at 80, 455. The ALJ also noted Dr. Mullennix's opinion in December 2011 that Plaintiff could sit for eight

8

hours during an eight-hour workday and lift as much as ten pounds. *Id*. at 80, 449. The ALJ noted that although Dr. Mullennix stated that Plaintiff was "unemployable," she qualified that statement by explaining that Plaintiff could perform a desk job. *Id*. at 80, 449.

The ALJ further recognized that Dr. Mullennix opined in April 2014 that Plaintiff could not sit or stand for more than one hour during an eight-hour workday. *Id*. at 80-81, 2169-72. Dr. Mullennix also opined that Plaintiff needed to alternate positions multiple times in a one-to-two-hour period, and could lift up to 20 pounds occasionally. *Id*. at 2172. The ALJ considered Dr. Mullennix's comment that Plaintiff had significant limitations in repetitive reaching, handling, fingering, or lifting, moderate limitations bilaterally in her grip strength and manipulative ability, and difficulty maintaining her neck in a constant position (as required, for example, to look at a computer screen). *Id*. at 81, 2172-73. The ALJ noted Dr. Mullennix's statement within this opinion that Plaintiff was unable to do a full-time competitive job on a sustained basis and was not capable of even low-stress work. *Id*. at 81, 2174.

Additionally, the ALJ considered Dr. Mullennix's October 2015 opinion that Plaintiff could not do repetitive physical tasks secondary to arthritis and pain issues; Dr. Mullennix also stated that Plaintiff was physically disabled since June 2011, not capable of gainful employment, and had permanent disability. *Id*. at 81, 2417.

Social security regulations require ALJs to generally extend "greater deference … to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). A

treating physician or psychologist's opinions must be given controlling weight when (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723. If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544). These factors likewise apply when an ALJ weighs the opinions of non-treating medical sources. *Gayheart*, 710 F.3d at 376.

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).[3] The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

In the present case, the ALJ set forth the correct legal criteria applicable to weighing treating medical source opinions. (Doc. #6, *PageID* #75). The ALJ placed little weight on Dr. Mullennix's opinions. *Id.* at 83. He first found that her opinions vary widely and are, largely, without sufficient support in the medical record. He accurately

observed that Dr. Mullennix qualified her opinion that Plaintiff was "unemployable" with the notation "desk job." Perhaps more significantly, the ALJ correctly recognized that Dr. Mullennix's reference to "desk job" was consistent with Plaintiff's work abilities as Dr. Mullennix described them on the same page of her report. *Id*. at 81-82, 449. Dr. Mullennix also indicated in this report that Plaintiff could sit for eight hours in an eight-hour workday and lift as much as ten pounds, which is consistent with the abilities needed to perform sedentary work. *Id*.; *see* 20 C.F.R. §§ 404.1567(a); 416.967(a) (defining full range of sedentary work).

The ALJ likewise explained that Dr. Mullennix's opinions included multiple inconsistencies and contradictory statements. For example, the ALJ noted that although Dr. Mullennix opined in October 2015 that Plaintiff was physically disabled and incapable of gainful employment since June 2011, this conclusion was directly contradictory to her December 2011 statement that Plaintiff was employable, and to her January 2012 statement that she had released Plaintiff to return to work on December 18, 2011. (Doc. #6, *PageID* #s 82, 449, 455, 2417). The ALJ also noted that while Dr. Mullennix opined in April 2014 that Plaintiff could not sit for more than one hour in a workday or stand more than one hour in a workday, and needed to alternate positions multiple times in a one-to-two-hour period, Dr. Mullennix had inconsistently stated in January 2012 that Plaintiff could sit as much as eight hours in an eight-hour workday (for two hours at a time) and could perform a desk job. *Id*. at 449, 2169-72. And the ALJ concluded that the more recent limitations on sitting, standing and walking were not supported by objective medical evidence and clinical findings. *Id*.

The ALJ, moreover, concluded that Dr. Mullennix's assessments varied greatly without sufficient support in the record, and were also lacking in clarity. *Id*. at 81. For example, in looking at the extensive limitations Dr. Mullennix set with regard to repetitive reaching, handling, fingering, and lifting, the ALJ noted that Plaintiff herself had not stated any upper-extremity limitations in her testimony, and the evidence documents an upper extremity impairment. *Id*. at 82. She noted also that Dr. Mullennix referred only to moderate to severe arthritis in the hips and knees, which do not impact the capacity to reach, handle or finger. And, Plaintiff's grip strength and manipulative ability were deemed moderately limited but with no reference to upper extremity impairments. *Id*. at 81, 2170, 2172-73. Similarly, in assessing Dr. Mullennix's restrictions against maintaining the neck in a constant position, being unable to perform a full time job competitively on a sustained basis, needing to take five-to-ten minute unscheduled breaks at unpredictable intervals during the workday, and needing to be absent from work more than three times a month, the ALJ found properly concluded that the record lacked evidence to support the medical necessity for these limitations. *Id*. at 82, 2122-24.

Turning to Plaintiff's mental-work limitations, the ALJ also considered the evidence related to her mental-health history. *Id*. at 73-79. He considered the treatment given by psychiatrist Dr. Jeffrey Bishop, who began treating Plaintiff in March 2011 on a monthly basis. *Id*. at 74, 76. The ALJ noted that (1) Dr. Bishop had reported prescriptions of psychotropic medication, (2) Dr. Bishop gave moderate-to-marked degrees of limitation in most aspects of mental functioning capacity, and (3) estimated

12

that Plaintiff would miss work two to three days a month due to her impairment. *Id*. at 74, 76, 2423. The ALJ gave some weight to Dr. Bishop's statement that Plaintiff had a moderate degree of mental limitation but concluded that Dr. Bishop's estimate of absences was speculative and not supported in the objective medical evidence and clinical findings. *Id*. at 77. The ALJ also placed little to no weight on Dr. Bishop's opinions that many of Plaintiff's mental-work limitations were "moderate to marked" because they were extreme. *Id*. at 76; *see* 20 C.F.R. § 404.1527(c)(2) (treating physician's opinion is entitled to controlling weight only if it is well supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record); *see also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). The ALJ therefore provided good reasons for finding that not all of Dr. Bishop's opinions were due great weight.

This is further seen in other evidence of record. The ALJ noted that during psychologist Dr. Griffith's December 2013 consultative examination that Plaintiff was friendly and polite, able to tend to her own personal grooming and hygiene, performed a few light chores, shopped for groceries with an electric cart, handled her own financial matters, displayed no loose associations, flight of ideas, or delusional believes. She was alert, response, and fully oriented with intact memory and no mental confusion. *Id*. at 73-74, 1433-34. Dr. Griffiths documented his diagnostic impression that Plaintiff had depressive disorder but he also observed that (1) Plaintiff had no difficulty understanding,

13

remember, and following simple instructions; (2) her attention and concentration skills were adequate for a limited time frame but she would have more difficulty paying attention and concentrating over extended periods; (3) anxiety and depression could affect her interpersonal functioning at work to some extent, and work stress could lead to slowed work performance. *Id*. at 74, 77, 1434-36. The ALJ also gave great weight to the state reviewing psychologists, who believed that Plaintiff had only mild limitations in performing activities of daily living and moderate limitations in social functioning and maintaining concentration, persistence, or pace. *Id*. at 77-78, 171, 185, 203, 220.

Still further, the ALJ noted that mental-health-treatment notes attributed many of Plaintiff's psychological symptoms to relationship issues with her boyfriend and family, and her symptoms were alleviated with medication, such as Wellbutrin. *Id*. at 76, 1080, 1757, 1759. Examination findings indicated normal memory, normal attention span, normal ability to concentrate, appropriate mood and affect, and appropriate judgment. *Id*. at 76, 975, 1424, 1783. The ALJ therefore limited her to simple, routine tasks in a static work environment with few changes in the work routine, no fast paced duties or strict production quotas, and no more than occasional and brief contact with the public. *Id*. at 83-84.

Plaintiff's argument that her doctors found her unemployable lacks merit and presents a disagreement with how the ALJ weighed differing medical opinions, "which is clearly not a basis for … setting aside the ALJ's factual findings." *Mullins v. Sec'y of Health and Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987). It is well-established, based on social-security regulations and case law, that the ALJ, not a medical source,

assesses and determines a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."); 20 C.F.R. § 404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity"); 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding residual functional capacity is reserved to the Commissioner); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("[t]he responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician….").

In summary, the ALJ considered Plaintiff's allegations in light of the record as a whole, and concluded that she was not as limited as she claimed, but rather, retained the ability to perform a range of sedentary work. In so doing, the ALJ considered Plaintiff's statements and testimony, her complaints to medical sources, her statements regarding her functional status, as well as the medical records from numerous doctors who treated her, examined her, or reviewed the longitudinal medical record. Based on such, the ALJ concluded that Plaintiff was not as limited as she claimed and could perform a range of sedentary work with postural, environmental, and mental limitations. (Doc. #6, *PageID* #79).

Accordingly, for all reasons set forth herein, the ALJ's decision applied the correct legal criteria and is supported by substantial evidence.

15

## IT IS THEREFORE RECOMMENDED THAT:

The ALJ's non-disability decision on December 9, 2015 be affirmed.


January 19, 2018 	*s/Sharon L. Ovington*
	Sharon L. Ovington
	United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within FOURTEEN days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to SEVENTEEN days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within FOURTEEN days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).